IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRIAN A. TATE, | * | |
| Petitioner | * | |
| v | * | Civil Action No. PWG-19-3217 |
| CASEY CAMPBELL, Warden, and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND | * * | |
| Respondents | * | |

\*\*\*

## MEMORANDUM

Pending is Petitioner Brian A. Tate's Motion to Stay consideration of his 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus under *Rhines v. Weber*, 544 U.S. 269 (2005). (ECF No. 32). Respondents state that they have no objection to such a stay. (ECF No. 27 at 2 n. 1; ECF No. 33). For reasons discussed below, I will grant the Motion.

### I.    BACKGROUND

Tate is challenging his 1983 conviction for first-degree murder in his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). Tate pleaded guilty to first-degree murder with the possibility of parole in the Circuit Court for Anne Arundel County, Maryland. *State v. Brian Arthur Tate*, No. 02-K-92-000862. Tate was sixteen years old at the time of the offense. He was seventeen at the time he pleaded guilty and was sentenced.

Respondents filed a Limited Answer to the Petition on June 24, 2020, seeking its dismissal as a "mixed petition" that contains exhausted and unexhausted claims,[1] or alternatively for Tate to

---

[1] Respondents also moved for dismissal of the Petition as time-barred. They later withdrew the time-bar argument. (ECF No. 27 at 2).

withdraw his unexhausted claims or seek a stay under *Rhines* while he exhausts his claims in state court. (ECF No. 12).

### A. Claims Presented

Tate's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, as supplemented, raises the following claims.

    A. His guilty plea was defective.

    B. He received ineffective assistance of counsel due to:

1. failure to investigate potentially viable defense strategies;

2. allowing Tate's parents to control his defense and coerce him into pleading guilty to first-degree murder;

3. failure to advise him of the collateral consequence of a life sentence in Maryland that parole is subject to gubernatorial approval;

4. failure to move to withdraw the guilty plea or respond to remarks by the court at sentencing that allegedly undercut the validity of Tate's guilty plea;

5. advising Tate to plead guilty to avoid a life without parole sentence without realizing that the prosecution had not validly served notice of its intention to seek a sentence of life without parole and that Tate was thus ineligible to receive that sentence;

6. advising Tate to plead guilty in order for the charges in the arson case to be *nolle prossed* without realizing that the indictment in the arson case was invalid;

7. filing a motion for modification of sentence and seeking a ruling on the motion prematurely against Tate's "[i]mplicit [i]nstruction";

8. cumulative prejudice from multiple instances of ineffective assistance;

9. trial counsel perjured himself to the guilty plea court regarding Tate's competence to plead guilty to first-degree murder; and

2

      10. trial counsel infringed on Tate's right to pursue a not-criminally-responsible defense pursuant to the involuntary waiver doctrine.

C. Prosecutorial misconduct to induce his guilty pleas by:

1. offering to withdraw notice of its intention to seek a sentence of life without parole, when this offer was "illusory" because the State had failed to properly and effectively serve such notice; and

2. filing the indictment against Tate in the arson case for the purpose of offering to *nolle pros* that indictment as part of the plea deal in the murder case, when the arson indictment was "illusory."

D. Due Process

Tate claims the Maryland appellate courts in three rulings violated "the 'fundamental fairness doctrine' implicit in the Due Process Clause" due to:

1. failure by both appellate courts to dismiss the State's application for leave to appeal from the grant of postconviction relief on the basis that the State filed its application in the wrong circuit court;

2. the Court of Appeals of Maryland's consideration of appellate arguments that the State had failed to preserve;

3. Judge Greene's failure to recuse himself as the author of the Court of Appeals' opinion on the basis of his prior ruling on Tate's motion to correct an illegal sentence when Judge Greene was a judge of the Circuit Court for Anne Arundel County;

E. Eighth Amendment Violation under *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016) ("Miller/Montgomery claim").[2]

(Petition, ECF Nos. 1, 1-1, 1-2, 1-3; "Petitioner's Motion for Leave to Supplement," ECF No. 6 at 23-25; Respondents' Limited Response, ECF No. 12 at 19-27; Respondents' Response in Support of Limited Answer, ECF No. 27 at 7-8).

---

[2] Tate claims that a person serving a life sentence in Maryland can only be paroled with the Governor's approval, and that Maryland governors "for the past 30 years" have had a "de facto policy of no parole for all offenders serving life." (ECF 1-3 at 10; ECF 12 at 24-27).

### B. Respondents' Limited Answer

Respondents acknowledge Tate's first five claims are exhausted, namely, his: (1) defective guilty plea (Claim A), (2) ineffective assistance failure to assess viable defense strategies (Claim B1), (3) ineffective assistance for allowing Tate's parents to control his defense (Claim B2), (4) ineffective assistance for failing to advise Tate that parole from a life sentence is subject to gubernatorial approval (Claim B3), and (5) ineffective assistance for failing to move to withdraw Tate's guilty plea at sentencing (Claim B4) (ECF No. 12 at 50; ECF No. 27 at 7-8).

Respondents assert that Tate's *Miller-Montgomery* claim (Claim E) and the two ineffective assistance claims based on trial counsel's letter to his parents (Claims B9 and B10) are unexhausted. (ECF No. 12 at 50-54, 61; ECF No. 27 at 13; ECF No. 6 at 31; ECF No. 6-2).

As to the remaining claims, Respondents assert ineffective assistance Claims B5, B6, B7, are "technically exhausted" but are procedurally defaulted because they were not fully litigated at all available state court levels.[3] (ECF No. 12 at 55-58; ECF No. 27 at 9-10, 11). They assert Tate's prosecutorial misconduct and due process claims, Claims C1, C2, D1, D2, D3, are "likely also procedurally defaulted, although it is arguably less clear." (ECF No. 12 at 58-61; ECF No. 27 at 9-11).[4]

### C. Tate's Reply

On July 7, 2020, I granted Tate sixty days to file a Response to the Limited Answer to state why (1) his *Miller/Montgomery* claim is exhausted, and if unexhausted whether he wants to waive

---

[3] The Court will not resolve the procedural default issues at this time, as Respondents indicate they have raised procedural default at this juncture "only to acknowledge that these claims are *not* exhausted." (ECF No. 27 at 10, 11 n. 5).

[4] Respondents do not directly address Claim B8, cumulative prejudice from multiple instances of ineffective assistance.

consideration of the unexhausted claim, recognizing that he may not later bring a now unexhausted claim without permission from the Fourth Circuit Court of Appeals; and (2) the Court should issue a stay and abeyance pursuant to *Rhines*, should the *Miller/Montgomery* claim be deemed unexhausted.  (ECF No. 14).

On September 18, 2020, Tate filed a Reply, which he later supplemented, in which he elected to withdraw his *Miller/Montgomery* claim (Claim E).  (ECF No. 21 at 25, 33-34; ECF No. 26 at 25).  Tate also withdrew his "claims surrounding the arson indictment as they relate to violations of due process, ineffective assistance of trial counsel and prosecutorial misconduct as unexhausted," which seems to refer to Claims B and C2. (ECF No. 26 at 25–26). Tate also indicated he was withdrawing what he referred to as his fifth, sixth, and seventh ineffective assistance claims (Claim B5, B6, B7). (ECF No. 21 at 34; ECF No. 26 at 28).  He also indicated that he would withdraw "his new claims of ineffective assistance [Claims B9, 10] if they were deemed unexhausted.  (ECF No. 26 at 26). Tate disputed Respondents' assertions of procedural default regarding his ineffective assistance claims for advising him to plead guilty to avoid arson charges and his two claims of prosecutorial misconduct.  (ECF No. 21 at 27-29).  On January 4, 2021, Tate filed a "Reply to Respondents' Supplemental Response in Support of the Limited Answer," in which he stated that he wanted to withdraw Claims B5, B6, B7, B8, B9, C1, C2, and E "[t]o avoid any further delays in these proceedings." (ECF No. 31 at 2).  He said that he would not be requesting a *Rhines* stay.  (ECF No. 31 at 3).

On April 14, 2021, Tate filed the pending Motion to Stay under *Rhines*, asking for "leave" to "reverse course." (ECF No. 32 at 1).  He states that he now believes it would be appropriate "with the benefit of hindsight to seek a stay under *Rhines*, until he has exhausted his claims."  (*Id*.

5

at 3). He adds that his claims of prosecutorial misconduct and several ineffective assistance claims (B5, B6, B7, B8, B9, C1, and C2), raised in a state habeas petition before the Circuit Court for Howard County, Maryland as Case No C-13-CV-20-000650, were summarily dismissed and he refiled them and "Claim E is still pending before the Maryland Court of Special Appeals, Case CSA-REG-537-2020, *Brian Tate v Governor Larry Hogan.*" ECF No. 32 at 3. Respondents filed a response to Tate's motion affirming that they do not oppose a *Rhines* stay in this case. (ECF No. 33).

## II. DISCUSSION

To secure federal habeas relief from a state court conviction a petitioner must first exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1) (2012); *Rose v. Lundy*, 455 U.S. 509, 510 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, this may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert it in an appeal to the Court of Special Appeals of Maryland and then to the Court of Appeals of Maryland by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through post-conviction proceedings, it must be raised in a petition filed in the Circuit Court and in an application for leave to appeal to the Court of Special Appeals. Md. Code Ann., Crim. Proc. § 7-109. If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202.

Federal district courts must dismiss mixed habeas petitions presenting both exhausted and unexhausted claims. *Pliler v. Ford*, 542 U.S. 225, 230 (2004) (citing *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982). A federal district court has discretion to stay the mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." *Stanley v. Bishop*, No. GLR-14-2028, 2017 WL 3189407, at *4 (D. Md. July 27, 2017) (citing *Rhines*, 544 U.S. at 271-72, 276). But, "stay and abeyance should be available only in 'limited circumstances' .... when the district court determines (1) there was good cause for the petitioner's failure to exhaust his claims first in state court," (2) the unexhausted claims are not "plainly meritless," and (3) the petitioner did not "engage[ ] in abusive litigation tactics or intentional delay." *Id*. at *4-5 (quoting *Rhines*, 544 U.S. at 277).

Tate's bid to "reverse course," by inference rescinds his requests to withdraw his unexhausted claims so that he may attempt to exhaust by presenting them before the state courts. The Court is mindful that Tate is a self-represented petitioner. Tate's earlier statements about withdrawing claims are somewhat ambiguous, especially in light of the characterization that some claims are not unexhausted but rather are procedurally defaulted. Moreover, Respondents explicitly state they do not object to a *Rhines* stay. Notably, Respondents "suggest" in regard to Claims C1, D2, and D3, that because it is "arguably unclear" if these claims are procedurally defaulted, "it would be prudent to assume the claims are unexhausted (rather than exhausted by procedural default) so that, if he wished, Tate could attempt to litigate them on the merits in state court." (ECF No. 27 at 11-12).

7

There is no evidence that Tate has engaged in dilatory litigation tactics, that good cause for the failure to exhaust is lacking, or that the claims are plainly meritless. Accordingly, the Court will grant the Motion to Stay. Tate shall inform the Court of the status of his state court proceedings twenty-eight days from the date of this Order and every six months thereafter. A separate Order follows.

April 30, 2021                           /S/
Date                                        Paul W. Grimm
                                            United States District Judge